UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

US BANKRUPTCY COURT
DISTRICT OF OREGON

2026 JUN -1  PM 2:40

In re

Melissa Ann Mesenbrink

Debtor

Case No. 25-34184 ~~PAID~~ ~~p13~~ REC'D _____

☐ Amended

**NOTICE OF HEARING ON MOTION
FOR RELIEF FROM DEBTOR'S
AUTOMATIC STAY IN A CHAPTER 7/13
CASE, AND/OR CODEBTOR'S STAY IN
A CHAPTER 13 CASE**

The attached objection, filed by completing the "objection" portions of the original motion, filed for the respondent, _Melissa Ann Mesenbrink_ , who is the (for example, debtor, codebtor, or trustee) _Debtor_ , is in response to the motion for relief from stay filed on behalf of movant _Selene Finance LP as Servicer for NCLP*_

The name and service address of the respondent's attorney (or respondent, if no attorney) are: _Appearing without Effective Counsel, (w)_
_Melissa Ann Mesenbrink_

(If debtor is respondent) The debtor's address and Taxpayer ID#(s) (last 4 digits) are:

_Taxpayer ID:_
_Last 4 digits 0164_

_Melissa Ann Mesenbrink_
_8084 N. Burlington Ave._
_Portland, OR 97203_ -

**NOTICE IS GIVEN that:**

A telephone hearing on the motion, at which witnesses may not testify, will be held as follows:

**Date:** _June 9, 2026_
**Time:** _1:30pm_
**Call In Number:** (855) 244-8681
**Access Code:** 2316 376 3280

If you have problems connecting, call the court at (503) 326-1500 or (541) 431-4000.

**TELEPHONE HEARING REQUIREMENTS**

1. You must call in and connect to the telephone hearing line or personally appear in the judge's courtroom no later than your scheduled hearing time. The court will not call you.

**721 (2/28/2025)**                    Page 1 of 2

2. You may be asked to call again from another phone if your connection is weak or creates static or disruptive noise.

3. Please mute your phone when you are not speaking. If you do not have a mute function on your phone, press *6 to mute and *6 again to unmute if you need to speak. Do not put the court on hold if it will result in music or other noise. If available, set the phone to "Do Not Disturb" so it will not ring during the hearing.

4. When it is time for you to speak, take your phone off the "speaker" option or headset to minimize background noise and improve sound quality. Position the telephone to minimize paper rustling. Do not use a keyboard or talk with others in the room. Be aware that telephone hearings may be amplified throughout the courtroom.

5. Do not announce your presence until the court calls your case. Simply stay on the line, even if there is only silence, until the judge starts the hearings, and then continue to listen quietly until your case is called.

6. Whenever speaking, first identify yourself.

7. Be on time. The judge may handle late calls the same as a late appearance in the courtroom.

_____
Signature

I certify that: (1) the objection was prepared on a copy of the original motion; (2) if the objection was electronically filed, it was prepared using the fillable PDF version of the motion unless the motion was filed on paper and could not be otherwise electronically obtained from the movant; and (3) that on __June 1st 2026__ this notice and the objection were served on the movant's attorney (or movant, if no attorney) at the address shown in the notice of motion.

_____
Signature

__Self - Debtor__
Relation to Respondent

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re )  Case No. _____**25-34184-thp13**_____
**Melissa Ann Mesenbrink** )
)
) **Notice of Motion for Relief**
) **From (Check All That Apply):**
) ☒ **Automatic Stay in a Chapter 7/13 Case**
) ☐ **Chapter 13 Codebtor Stay**
Debtor(s) )

1. **YOU ARE NOTIFIED** that a motion was filed by **Selene Finance LP as Servicer for MCLP\***_____, the moving party, for (Check all that apply):

   ☒Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 U.S.C. § 362.

   ☐Relief from the stay protecting the codebtor and codebtor's property as provided by 11 U.S.C. § 1301.

   ☐Codebtor's name and service address are: _____

   _____.

2. A copy of the motion is attached. The name and service address of the moving party's attorney (or moving party, if no attorney) are: **Amber L. Labrecque, ZBS Law, LLP, 5 Centerpointe Dr.,**_____
   **Suite 400, Lake Oswego, OR 97035**_____.

3. If you wish to resist the motion, you must, within 14 days of the service date shown below, file the following with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E. 8th Ave. #2600, Eugene OR 97401:

   a. A written response that states the facts supporting the opposition to the motion by filling in the applicable "response" portions on a copy of the original motion. If the response will be electronically filed, the response must be prepared using the fillable pdf version of the original motion unless the motion was filed on paper and could not be electronically obtained from the movant; and

   b. A fully completed notice of hearing using Local Bankruptcy Form (LBF) 721, including the date and time of the hearing. Available hearing dates and times are posted at https://www.orb.uscourts.gov under the "Hearings" heading. If you do not have internet access, please call the court at (503) 326-1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information.

4. **Failure to Object or Serve Proper Notice of Hearing**. If you fail to file a timely response and notice of hearing, then the automatic stay may expire as to the debtor(s) pursuant to 11 U.S.C. § 362(e) and the stay protecting the codebtor may expire pursuant to 11 U.S.C. § 1301(d), or the court may sign an order without further notice, submitted by the moving party on LBF 720.90, granting relief from the debtor stay and/or codebtor stay.

720 (12/1/2018)                                    Page 1 of 2

I certify that:

(1)  The motion was prepared using the fillable PDF version of <u>LBF 720.80</u>; and

(2) On _____**05/19/2026**_____ this notice and the motion were served on the debtor(s), any codebtor at the address listed above, the trustee, the U.S. Trustee, members of any committee elected pursuant to 11 U.S.C. § 705, and their respective attorneys.


**/s/ Amber L. Labrecque**                                    094593
Signature of Moving Party or Attorney              (OSB#)


**720 (12/1/2018)**                          Page 2 of 2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re
**Melissa Ann Mesenbrink**

Case No. ___**25-34184-thp13**___
☐ Amended

**[*Check all applicable boxes*]**
**CHAPTER 7/13 MOTION FOR RELIEF FROM**
☒ Debto☐ Chapter 13 Codebtor Stay Filed by Movant:
___**Selene Finance LP as servicer for MCLP***___
**Objection to Stay Motion filed by Respondent:**
_____

Debtor

---

*Instructions to movant: You must file this motion with a notice of motion on Local Bankruptcy Form (LBF) 720. See LBF 720.50, Procedures re: Motions for Relief from Stay, for more information.*

1. **Debt, Default, Other Encumbrances, Description and Value of Collateral** [*To be completed by movant*]

   a. Description of collateral [*e.g., car model, year, and VIN, or property address*]:
   **Real Property: 8084 N Burlington Ave., Portland, OR 97203**
   **Recording #2006-236919; Multnomah County, Oregon**

   b. Amount of debt: $ __**114,669.55**__, consisting of principal of $ __**94,615.13**__, interest of $ __**8,442.23**__, and other:
   **Deferred principal $932.64; Fees $91.00; Late Charges $233.15; Recoverable Balance $6,695.39; Escrow Advance $3,660.01; Suspense Balance ($0.00). *The unpaid principal balance owed is in the amount of $94,615.13 as of 5/5/2026.**

   c. Description, amount, and priority of other encumbrances on collateral. If not known, include applicable information from debtor's schedules if available on PACER:
   **N/A**

   Total debt secured by collateral [*1.b. + 1.c.*]: $ __**114,669.55**__.

   d. Value of collateral: $__**255,000.00**__.
   Equity in collateral: $__**119,930.45**__, after deducting $__**20,400.00**__ of liquidation costs.

   e. Current monthly payment: $__**1,246.71**__.

   f. If Chapter 13:

   (1) $__**7,782.55**__ postpetition default consisting of [*e.g., $ _____ payments, $_____ late charges, $_____ fees*]:
   **$1,246.71 5 mo. (1/1/26 - 5/1/26); Suspense Balance ($0.00); In addition, reasonable attorney fees and court filing costs not to exceed $1,549.00 will be incurred for representation in this matter.**

**720.80 (12/1/2024)**                          Page 1 of 5

(2) $ **20,455.79**_____ prepetition default consisting of ☒ amounts specified in proof of claim, or, ☐ consisting of:

g.  If Chapter 7, total amount of default: $_____.

**OBJECTION** [*Identify specific items disputed and specify what you contend are the pertinent facts, including why there is a postpetition default, if applicable; to be completed by respondent*]:

2.  **Relief from Stay Should be Granted Because:** [*Check all that apply; to be completed by movant*]:

☐ Lack of insurance on collateral.

☐ No equity in the collateral and the property is not necessary for an effective reorganization.

☐ Failure of debtor to make Chapter 13 plan payments to the trustee.

☒ Failure of debtor to make direct payments required by Chapter 13 plan.

☐ Other [*describe*]:

**OBJECTION** [*Specify why relief from stay should be denied. If respondent proposes to cure a postpetition default, detail the cure by attaching a proposed order using LBF 720.90 available at https://www.orb.uscourts.gov under Forms/Local Forms; to be completed by respondent*]:

3.  **Background** [*To be completed by movant)*

a.  Date petition filed: **12/16/2025**____ Current Chapter: **13**___ (7 or 13)

If 13, current plan date **12/30/2025**____ Confirmed:  ☐ Yes  ☒ No

If 13, treatment of movant's prepetition claim(s) in plan:
**Pre-Petition and Post-petition payments to be paid directly to Movant.**

If 7, debtor ☐ has ☐ has not stated on Official Form B 108 that debtor intends to surrender the collateral.

b.  Movant has a lien on the collateral by virtue of [*check all applicable sections, see also paragraph 6 below*]:

**720.80 (12/1/2024)**                    Page 2 of 5

☒ Security agreement, trust deed, or land sale contract dated **12/21/2006** and any assignment of that interest to movant. The security interest was perfected as required by applicable law on **12/26/2006** .

☐ Retail installment contract dated _____ and any assignment of that interest to movant. The security interest was perfected on the certificate of title on _____ .

☐ Other [*describe*]:

**OBJECTION** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:

4. **Request for Relief from Codebtor Stay** [*Chapter 13 only*]
   a. _____ , whose address is _____
      _____ , is a codebtor on the obligation described above, but is not a debtor in this bankruptcy.

   b. Movant should be granted relief from the codebtor stay because [*check all that apply*]:
      ☐ codebtor received the consideration for the claim held by movant ☐ debtor's plan does not propose to pay movant's claim in full ☐ movant's interest would be irreparably harmed by continuation of the codebtor stay as a result of the default(s) described above ☐ because:

**OBJECTION** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:

5. **Other Pertinent Information** [*To be completed by movant, if applicable*]:
Selene Finance LP services the underlying mortgage loan and note for the property referenced in this motion for (Movant). In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is endorsed in blank. Movant is the beneficiary or the assignee of the Deed of Trust.

**OBJECTION** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:

6. **Relief Requested** [*Check all applicable sections; to be completed by movant*]:

[X] Movant requests relief from the automatic stay to allow it to foreclose its lien on the collateral and to take any necessary action to obtain possession of the collateral.

[ ] Movant has a security interest in real property and requests relief from stay of an act against the collateral and that the relief be binding in any other bankruptcy case purporting to affect the collateral filed not later than 2 years after the date of the entry of an order granting this motion. [*If you check this box, you must complete paragraph 5 above to support this request. If you do not do so, the Court will not grant relief binding in any other bankruptcy case.*]

[ ] Movant requests that the 14-day stay provided by FRBP 4001(a)(4) be waived based on the following cause:

[X] Other [*describe and explain cause*]:

**Movant requests that upon entry of the order granting relief from stay, it be exempted from further compliance with Fed. Rule Bankr. P. 3002.1 in the instant bankruptcy case.**

**OBJECTION** [*Identify any disputed items and specify the pertinent facts. If respondent agrees to some relief, attach a proposed order using* LBF 720.90 *available at* https://www.orb.uscourts.gov *under Forms/Local Forms; to be completed by respondent*]:

7. **Documents**:

**If movant claims to be secured in paragraph 3.b. above,** movant has attached to and filed with this motion a copy of the documents creating and perfecting the security interest, if not previously attached to a proof of claim.

**If this case is a chapter 13 case and the collateral is real property**, movant has attached to and filed with this motion a postpetition payment history current to a date not more than 30 days before this motion is filed, showing for each payment the amount due, the date the payment was received, the amount of the payment, and how movant applied the payment.

**RESPONDENT requests movant provide** respondent with the following document(s), if any are marked below, which are pertinent to this objection:

**720.80 (12/1/2024)**                      Page 4 of 5

☐ Postpetition payment history, if not required above.

☐ Documents establishing that movant owns the debt described in paragraph 1 or is otherwise a proper party to bring this motion.

☑ Other document(s) [describe]:

See Attached Objection.

| Movant/Attorney | Respondent /Attorney |
| --- | --- |
| | (By signing, the respondent also certifies that the respondent has not altered the information completed by movant.) |

Signature: /s/ Amber L. Labrecque

Name: **Amber L. Labrecque, Esq.**

Address: **5 Centerpointe Dr., Suite 400**

**Lake Oswego, OR 97035**

Email: **bankruptcy@zbslaw.com**

Phone #: **(503) 946-6558**

OSB#: **094593**

Signature: _Melissa Mesenbrink_

Name: _Melissa Ann Mesenbrink_

Address: _8084 N. Burlington Ave_
_Portland, OR 97203_

Email: _mamesenbrink@gmail.com_

Phone #: _503-381-2692_

OSB#: _____

*You are hereby notified that the creditor is attempting to collect a debt and any information obtained will be used for that purpose.*

**720.80 (12/1/2024)**                    Page 5 of 5

# ATTACHMENT PAGE

**Movant:** *Selene Finance LP as servicer for MCLP ASSET COMPANY, INC.

1

Melissa Ann Mesenbrink

8084 N. Burlington Ave.

Portland, OR 97203

Debtor, Appearing Without Effective Counsel

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re:

### MELISSA ANN MESENBRINK,

Debtor.

Case No. 25-34184-thp13

Chapter 13

## DEBTOR'S OBJECTION TO MOTION FOR RELIEF FROM AUTOMATIC STAY AND ~~REQUEST FOR ADDITIONAL TIME TO FILE AMENDED CHAPTER 13 PLAN~~

### I. PRELIMINARY STATEMENT REGARDING COUNSEL

Debtor Melissa Ann Mesenbrink files this objection without effective legal representation. While Jessica Molligan remains attorney of record because no order permitting her withdrawal has been entered, Ms. Molligan has effectively abandoned Debtor. On May 29, 2026, Ms. Molligan communicated to Debtor via email that she sees "no point at all in objecting" to the instant motion and that there is "no legal basis" to oppose relief from stay — advice that is legally incorrect and harmful to Debtor's interests, as set forth below. Ms. Molligan's office is also closed from June 3 through June 9, 2026 — spanning the very period in which Debtor's response is due.

Ms. Molligan's conduct is currently under investigation by the United States Trustee, who filed a Motion to Disgorge Attorney Fees on May 26, 2026 (ECF Doc. 53 ), documenting, among other things, that Ms. Molligan forged Debtor's electronic signature on the retainer agreement, publicly filed Debtor's unredacted Social Security number, and failed to advise Debtor of her legal options. Debtor files this objection independently to protect her home and her rights, and respectfully requests the Court's indulgence given these extraordinary circumstances.

### II. INTRODUCTION

Debtor respectfully objects to the Motion for Relief from Automatic Stay filed by Selene Finance LP as Servicer for MCLP ("Movant") with respect to the real property located at 8084 N. Burlington Ave., Portland, OR 97203 (the "Property"). Debtor further requests that this Court grant

1

her additional time to file an amended Chapter 13 plan that will address all arrears and provide for retention of the Property. As demonstrated below, Movant's own motion confirms that Debtor holds substantial equity in the Property, the automatic stay should be maintained, and Debtor has a genuine and viable path to reorganization.

## III. BACKGROUND

1. Debtor filed this Chapter 13 bankruptcy case on December 16, 2025 to stop an imminent foreclosure on her primary residence. The automatic stay took effect upon filing pursuant to 11 U.S.C. § 362(a).

2. Debtor's case was dismissed on March 6, 2026, due in significant part to the failure of her attorney, Jessica Molligan, to file a timely and adequate amended Chapter 13 plan. The United States Trustee's Motion to Disgorge Fees documents extensively that this failure was attributable to attorney misconduct, not to Debtor's own unwillingness to reorganize.

3. This Court reopened the case on approximately March 23, 2026, following Debtor's communication to the U.S. Trustee regarding attorney misconduct. The automatic stay has been in effect since reopening.

4. On May 21, 2026, the Chapter 13 Trustee, Wayne Godare, issued a Special Notice to Debtor under Section 1328(a), advising Debtor of the need to cure the direct payment default and stating his intention to keep the case open through the 60th month to allow Debtor time to do so. This notice demonstrates that the Trustee does not seek dismissal and that Debtor has a pathway to discharge.

5. On May 26, 2026, the U.S. Trustee filed a Motion to Disgorge Attorney Fees confirming that Debtor was deprived of proper legal advice — including advice about her right to retain or sell the Property through the Chapter 13 plan — as a direct result of attorney misconduct.

6. On May 29, 2026, Debtor's attorney of record advised Debtor by email that she sees no basis to object to this motion and that her office will be closed from June 3 through June 9, 2026, effectively leaving Debtor without counsel during the response period.

## IV. LEGAL ARGUMENT

A. Debtor Has Substantial Equity — Relief from Stay Is Not Warranted Under § 362(d)(2).

Under 11 U.S.C. § 362(d)(2), relief from the automatic stay as to property may only be granted where: (1) the debtor does not have equity in the property; AND (2) the property is not necessary to an effective reorganization. Both prongs must be satisfied. Here, neither is.

Movant's own motion confirms that the Property is valued at $255,000.00 with total secured debt of $114,669.55. After deducting estimated liquidation costs of $20,400.00, Debtor has approximately $119,930.45 in equity. This is substantial equity by any measure. Movant cannot satisfy the first prong of § 362(d)(2), and relief from stay should therefore be denied.

B. The Property Is Necessary for an Effective Reorganization.

2

The Property at 8084 N. Burlington Ave. is Debtor's primary residence. Debtor has consistently expressed her intention to retain her home throughout these proceedings, and her prior attorney's failure to develop a viable plan does not reflect Debtor's own intent or ability to reorganize. Debtor is currently employed and is actively seeking full-time employment commensurate with her educational background (Bachelor's Degree and MBA) and professional experience in Human Resources. Debtor is prepared to propose an amended Chapter 13 plan providing for cure of all arrears over the life of the plan while maintaining regular monthly mortgage payments.

C. The Post-Petition Default Arose from Attorney Abandonment, Not Bad Faith.

The post-petition default of $7,782.55 identified in Movant's motion arose during a period in which Debtor's attorney was actively failing to represent her, attempting to withdraw without court approval, and ultimately contributing to the dismissal of the case. The U.S. Trustee has documented this misconduct extensively. This Court has already recognized the exceptional circumstances of this case by reopening it. Granting relief from stay now, before Debtor has had a meaningful opportunity to file an amended plan with competent counsel, would compound the harm caused by attorney misconduct.

D. The Chapter 13 Trustee's Own Notice Supports Maintaining the Stay.

The May 21, 2026 Special Notice from Chapter 13 Trustee Wayne Godare confirms that the Trustee is not seeking dismissal and intends to keep the case open through the 60th month to allow Debtor to cure the direct payment default. Granting Movant relief from stay while the Trustee is actively working to preserve Debtor's path to discharge would be inconsistent with the purpose of Chapter 13 and the Trustee's own stated position.

## VI. CONCLUSION

For the foregoing reasons, Debtor respectfully requests that this Court:

(1)  DENY Movant's Motion for Relief from Automatic Stay; or in the alternative,

(2)  CONTINUE the hearing no less than 60 days to allow Debtor to obtain counsel and file an amended Chapter 13 plan providing for payment of all arrears and continuation of regular mortgage payments; and

(3)  Grant such other relief as the Court deems just and proper.

Debtor respectfully submits that the substantial equity in the Property, the Chapter 13 Trustee's stated support for maintaining the case, and the extraordinary circumstances of attorney abandonment all weigh strongly in favor of maintaining the automatic stay and giving Debtor a meaningful opportunity to reorganize.

Respectfully submitted,

*Melissa Ann Mesenbrink*

Melissa Ann Mesenbrink

Debtor, Appearing Without Effective Counsel

8084 N. Burlington Ave.

Portland, OR 97203

Case No. 25-34184-thp13

Date:_____6\1\26_____

4

# INITIAL INTEREST<sup>SM</sup> NOTE

| DECEMBER 21, 2006 | BEAVERTON | OREGON |
|---|---|---|
| [Date] | [City] | [State] |

8084 N BURLINGTON AVE, PORTLAND, OR 97203

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****129,471.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of the month beginning on FEBRUARY 01, 2007 . Before the first fully amortizing principal and interest payment due date, my monthly payments will be only for the interest due on the unpaid principal of this Note. The due date of my first payment including fully amortizing principal and interest is the first day of FEBRUARY 01, 2017 . I will make payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on JANUARY 01, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 11701, NEWARK, NJ 071014701 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ *********674.33 until the due date of the first fully amortizing principal and interest payment. Beginning with the first fully amortizing principal and interest payment, my payment will be in the amount of U.S. $ ************946.34

The Note Holder will notify me prior to the date of any change in the amount of my monthly payment in accordance with Section 7 of this Note. The Note Holder will provide the title and telephone number of a person who will answer any questions I may have regarding the notice.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to the changes. If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, the partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the due date of my last interest only payment, the amount of my monthly payment will not change unless the Note Holder agrees in writing to that change.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of                    **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be                    **5.000** % of the overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.



## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
MELISSA A MESENBRINK          -Borrower                                          -Borrower


_____ (Seal)                    _____ (Seal)
                              -Borrower                                          -Borrower


_____ (Seal)                    _____ (Seal)
                              -Borrower                                          -Borrower


_____ (Seal)                    _____ (Seal)
                              -Borrower                                          -Borrower


*[Sign Original Only]*

WITHOUT RECOURSE
PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.
BY
Joan M. Mills, Vice President



Until a change is requested all tax statements shall be sent
to the following address.
WELLS FARGO REAL ESTATE TAX
SERVICES, LLC
1 HOME CAMPUS X2502-011
DES MOINES, IA  50328-0001

WHEN RECORDED MAIL TO
WFHM FINAL DOCS

1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

TAX ACCOUNT NUMBER

Recorded in MULTNOMAH COUNTY, OREGON
            C. Swick,  Deputy Clerk
C18    19                              ATMCS
Total :      111.00

2006-236919    12/26/2006 11:06:17am

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 21, 2006                     ,
together with all Riders to this document.

(B) "Borrower" is MELISSA A MESENBRINK, A SINGLE PERSON

Borrower is the trustor under this Security Instrument.

(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
Lender's address is P.O. BOX 11701, NEWARK, NJ  071014701

Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is FIDELITY NATIONAL TITLE INS CO
10540 S.E. STARK, PORTLAND, OR  97216

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            Form 3038 1/01

-6(OR) (0400)
Page 1 of 18                    Initials:
   VMP Mortgage Solutions, Inc. (800)521-7291

Recorded By
First American Title Insurance Company of Oregon
No.

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

(E) "Note" means the promissory note signed by Borrower and dated DECEMBER 21, 2006 .
The Note states that Borrower owes Lender ONE HUNDRED TWENTY NINE THOUSAND FOUR HUNDRED SEVENTY ONE AND 00/100                                                        Dollars
(U.S. $ ****129,471.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 01, 2037 .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [ ] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Initials: ___

-6(OR) (0409)                    Page 2 of 15                              Form 3038   1/01

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**                                 of **MULTNOMAH**                                              :

         [Type of Recording Jurisdiction]                                 [Name of Recording Jurisdiction]

**ATTACH LEGAL DESCRIPTION TO DEED OF TRUST FOR RECORDING**

**THIS IS A PURCHASE MONEY SECURITY INSTRUMENT.**
**TAX STATEMENTS SHOULD BE SENT TO:  WELLS FARGO HOME MORTGAGE, P.O. BOX 11701, NEWARK, NJ  071014701**

which currently has the address of

**8084 N BURLINGTON AVE**                                                                          [Street]
**PORTLAND**                                                 [City] , Oregon  **97203**            [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials: _____

VMP-6(OR) (0406)                         Page 3 of 15                                        Form 3038  1/01

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: ___

-6(OR) (0408)                    Page 4 of 15                    Form 3038   1/01

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6(OR) (0408)                        Page 5 of 15          Initials: _____          Form 3038   1/01

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _____

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6(OR) (0408)                              Page 8 of 15                Initials: _____                Form 3038   1/01

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

-6(OR) (0406)                          Page 10 of 15                          Form 3038   1/01

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

VMP-6(OR) (0408)          Page 12 of 15          Initials: _____          Form 3038  1/01

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

**26. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

**27. Required Evidence of Property Insurance.**

WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

Initials: _____

VMP-6(OR) (0408)      Page 13 of 15      Form 3038   1/01

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
MELISSA A MESENBRINK                -Borrower

_____ (Seal)
                                                -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                                        -Borrower

-6(OR) (0406)                Page 14 of 15                Form 3038   1/01

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

STATE OF OREGON,  County ss:
On this **22nd** day of December 2006, personally appeared the above named
MELISSA A MESENBRINK

and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires:

(Official Seal)     **10/21/08**     Before me:

_Candace Brown_

Notary Public for Oregon

> OFFICIAL SEAL
> **CANDACE BROWN**
> NOTARY PUBLIC-OREGON
> COMMISSION NO.■■■■
> MY COMMISSION EXPIRES OCT. 21, 2008

Initials:

-6(OR) (0406)          Page 15 of 15                          Form 3038  1/01

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 21ST day of DECEMBER, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to WELLS FARGO BANK, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 8084 N BURLINGTON AVE, PORTLAND, OR 97203

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as: MATTHEW FRANK CONDOS

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance,

MULTISTATE CONDOMINIUM RIDER-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

⟨VMP⟩-8R (0008) Form 3140 1/01
Page 1 of 3 Initials:_____
VMP MORTGAGE FORMS
(800)521-7291

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _UW_

-8R (0008)                                   Page 2 of 3                                   Form 3140 1/01

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Melissa A Mesenbrink_ (Seal)
MELISSA A MESENBRINK          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

VMP®-8R (0008)          Page 3 of 3          Form 3140 1/01

Page 18 of 19

## Exhibit "A"

Real property in the  County of Multnomah, State of Oregon, described as follows:

Unit 15-4, MATTHEW FRANK CONDOMINIUM, SUPPLEMENTAL PLAT NO. 3: RECLASSIFICATION OF VARIABLE PROPERTY, A PORTION OF TRACT "A", in the City of Portland, County of Multnomah, and State of Oregon. TOGETHER WITH, an undivided interest in and to the general and limited common elements appertaining thereto as set forth in Declaration Recorded April 18, 2006 as Fee No. 2006-070788 and amended by instruments Recorded June 28, 2006 as Fee No. 2006-118487, August 29, 2006 as Fee No. 2006-160712 and November 20, 2006 as Fee No. 2006-214724.

Tax Parcel Number:

*First American Title*

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

| | |
|---|---|
| Multnomah County Official Records<br>R Weldon, Deputy Clerk | **2015-104214** |
| | 08/13/2015 12:06:55 PM |
| 1R-MTG ASGT  Pgs=2 Stn=12 ATRCA<br>$10.00 $11.00 $10.00 $20.00 | $51.00 |

Prepared by, Recording Requested By
and Return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928

# ASSIGNMENT OF DEED OF TRUST

Loan:
Client:



*FOR VALUE RECEIVED*, **WELLS FARGO BANK, N.A., ITS SUCCESSORS AND ASSIGNS**, whose address
is 1 Home Campus, Des Moines, IA  50328, does hereby assign and transfer to **GCAT MANAGEMENT
SERVICES 2015-13 LLC** whose address is c/o The Corporation Trust Company, Corporation Trust Center, 1209
Orange Street, Wilmington, Delaware, DE  19801, all its right, title and interest in and to the following described
deed of trust, together with certain note(s) described with all interest, all liens, any rights due or to become due
thereon, executed by **MELISSA A. MESENBRINK, A SINGLE PERSON to WELLS FARGO BANK, N.A.** for
$129,471.00 dated 12/21/2006 of record on 12/26/2006 at Document Number 2006-236919, in the **MULTNOMAH**
County Clerk's Office, State of **OREGON**.

Property Address: 8084 BURLINGTON AVE, PORTLAND, OREGON 97203

Executed this ___6.26.15___

**WELLS FARGO BANK, N.A. BY ITS ATTORNEY IN FACT, RUSHMORE LOAN MANAGEMENT
SERVICES LLC**

By: ___Linda Ganteken Chapa___
Title: ___Sr. Vice President___

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

## ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF _____Dallas_____

Before me, the undersigned officer, on this day, personally appeared ~~Linda Gonnaker Chase~~ the
____Sr. Vice President____ of RUSHMORE LOAN MANAGEMENT SERVICES LLC AS ATTORNEY IN
FACT FOR WELLS FARGO BANK, N.A., ITS SUCCESSORS AND ASSIGNS, known to me to be the person
whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for
the purposes and consideration therein expressed.

Given under my hand and seal this __6/26/15__

_Pamela G Paschall_
Notary Public in and for the State of TEXAS
Notary's Printed Name: _____
My Commission Expires: _____

PAMELA G PASCHALL
My Commission Expires
May 6, 2019

DOT for $129,471.00 dated 12/21/2006

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

| | |
|---|---|
| Multnomah County Official Records<br>R Weldon, Deputy Clerk | **2015-104215** |
| | 08/13/2015 12:06:55 PM |
| 1R-MTG ASGT  Pgs=2 Stn=12 ATRCA<br>$10.00 $11.00 $10.00 $20.00 | $51.00 |

Prepared by, Recording Requested By
and Return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928

# ASSIGNMENT OF DEED OF TRUST

Loan:
Client

Record 2nd.

**FOR VALUE RECEIVED**, GCAT MANAGEMENT SERVICES 2015-13 LLC, ITS SUCCESSORS AND ASSIGNS, whose address is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, DE 19801, does hereby assign and transfer to MTGLQ INVESTORS, L.P. whose address is c/o The Goldman Sachs Group, Inc., 6011 Connection Drive, 5th Floor, Irving, TX 75039, all its right, title and interest in and to the following described deed of trust, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by MELISSA A. MESENBRINK, A SINGLE PERSON to WELLS FARGO BANK, N.A. for $129,471.00 dated 12/21/2006 of record on 12/26/2006 at Document Number 2006-236919, in the MULTNOMAH County Clerk's Office, State of OREGON.

Property Address: 8084 BURLINGTON AVE, PORTLAND, OREGON 97203

Executed this   MAY 1 3 2015

GCAT MANAGEMENT SERVICES 2015-13 LLC BY ITS ATTORNEY IN FACT, MTGLQ INVESTORS, L.P.

By:     ADAM PICK
Title:   VICE PRESIDENT

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

# ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF DALLAS

This instrument was acknowledged before me on ____MAY 1 3 2015____ by ADAM PICK the VICE PRESIDENT of MTGLQ Investors, L.P. as attorney in fact for GCAT MANAGEMENT SERVICES 2015-13 LLC, ITS SUCCESSORS AND ASSIGNS, on behalf of said .

Notary Public in and for the State of Texas
Notary's Printed Name: ___JENNIFER LYNNE CARY___
My Commission Expires: ___\\\\OU 120 14___

JENNIFER LYNNE CARY
Notary Public, State of Texas
My Commission Expires
November 20, 2018

DOT for $129,471.00 dated 12/21/2006

*323970*

| Multnomah County Official Records<br>E Murray, Deputy Clerk | **2020-028132** |
| --- | --- |
| | 03/09/2020 08:54:52 AM |
| MORT-ASGN    Pgs=1 Stn=21 ATRG<br>$5.00 $11.00 $6.00 $60.00 | $82.00 |

**OREGON**
COUNTY OF **MULTNOMAH**
LOAN NO.: ▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉
WHEN RECORDED MAIL TO:
ATTN: ASSIGNMENT DEPT.
RUSHMORE LOAN MANAGEMENT SERVICES LLC C/O FIRST
AMERICAN MORTGAGE SOLUTIONS, LLC
1795 INTERNATIONAL WAY
IDAHO FALLS, ID 83402, PH. (208) 528-9895

## ASSIGNMENT OF TRUST DEED BY BENEFICIARY OR HIS SUCCESSOR IN INTEREST

FOR VALUE RECEIVED, MTGLQ INVESTORS, L. P., located at 2001 ROSS AVENUE SUITE 2800, DALLAS, TX 75201, Assignor, who is the beneficiary, his successor in interest, or nominee thereof, under the below described Deed of Trust, does hereby grant, assign, transfer, and set over unto U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR LEGACY MORTGAGE ASSET TRUST 2019-GS3, located at 60 LIVINGSTON AVENUE EP-MN-WS3D, ST. PAUL, MN 55107, hereinafter called Assignee, his executors, administrators, successors and assigns, all of Assignor's rights, benefits, whatsoever accrued or to accrue, and its interest in and under that certain Deed of Trust dated DECEMBER 21, 2006, executed and delivered by MELISSA A MESENBRINK, A SINGLE PERSON, Trustor(s), to FIDELITY NATIONAL TITLE INS CO, Original Trustee, for the benefit of WELLS FARGO BANK, N.A., Original Beneficiary, or designated nominee of the Original Beneficiary, and recorded on DECEMBER 26, 2006 as Instrument No. 2006-236919 in the Records of the County Clerk's Office for MULTNOMAH County, State of OREGON, conveying the real property in said county, described as follows:

AS DESCRIBED IN SAID DEED OF TRUST

PROPERTY ADDRESS: 8084 N BURLINGTON AVE, PORTLAND, OR 97203

Assignor, the undersigned, does hereby covenant to and with said Assignee that the undersigned is the Beneficiary, his successor in interest, or the nominee thereof, under said Deed of Trust and that he has good right to convey, transfer, and assign the same, as aforesaid.

In construing this instrument and whenever the contest hereof so requires, the masculine gender includes the feminine and the neuter and the singular number includes the plural.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **DEC 2 4 2019**.

MTGLQ INVESTORS, L.P.

ANDREA RHINEHARDT, VICE PRESIDENT

STATE OF **TEXAS**          COUNTY OF **DALLAS** ) ss.

On **DEC 2 4 2019**, before me, Blake Doyle, personally appeared ANDREA RHINEHARDT known to me to be the VICE PRESIDENT of MTGLQ INVESTORS, L.P. the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

Blake Doyle
_____ (COMMISSION EXP. **SEP 1 4 2021** )
NOTARY PUBLIC

> BLAKE DOYLE
> Notary Public, State of Texas
> Comm. Expires
> Notary ID 1▉

Page 1 of 1

| | |
|---|---|
| Multnomah County Official Records<br>E Murray, Deputy Clerk | **2023-002942** |
| | 01/18/2023 09:12:34 AM |
| MORT-ASGN    Pgs=1 Stn=10 ATCG<br>$5.00 S11.00 $10.00 S60.00 | $86.00 |

**OREGON**
COUNTY OF MULTNOMAH
LOAN NO.: ████████

WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS
1795 INTERNATIONAL WAY
IDAHO FALLS, ID 83402, PH. 208-528-9895

## ASSIGNMENT OF TRUST DEED BY BENEFICIARY OR HIS SUCCESSOR IN INTEREST

FOR VALUE RECEIVED, **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR LEGACY MORTGAGE ASSET TRUST 2019-GS3**, located at **60 LIVINGSTON AVENUE EP-MN-WS3D, ST. PAUL, MN 55107**, Assignor, who is the beneficiary, his successor in interest, or nominee thereof, under the below described Deed of Trust, does hereby grant, assign, transfer, and set over unto **MCLP ASSET COMPANY, INC.**, located at **2001 ROSS AVENUE SUITE 2800, DALLAS, TX 75201**, hereinafter called Assignee, his executors, administrators, successors and assigns, all of Assignor's rights, benefits, whatsoever accrued or to accrue, and its interest in and under that certain Deed of Trust dated **DECEMBER 21, 2006**, executed and delivered by **MELISSA A MESENBRINK, A SINGLE PERSON**, Trustor(s), to **FIDELITY NATIONAL TITLE INS CO**, Original Trustee, for the benefit of **WELLS FARGO BANK, N.A.**, Original Beneficiary, or designated nominee of the Original Beneficiary, and recorded on **DECEMBER 26, 2006** as Instrument No. 2006-236919 in the Records of the  County Clerk's Office for **MULTNOMAH** County, State of **OREGON**, conveying the real property in said county, described as follows:

**AS DESCRIBED IN SAID DEED OF TRUST**

PROPERTY ADDRESS: **8084 N BURLINGTON AVE, PORTLAND, OR 97203**

Assignor, the undersigned, does hereby covenant to and with said Assignee that the undersigned is the Beneficiary, his successor in interest, or the nominee thereof, under said Deed of Trust and that he has good right to convey, transfer, and assign the same, as aforesaid.

In construing this instrument and whenever the context hereof so requires, the masculine gender includes the feminine and the neuter and the singular number includes the plural.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on ____JAN 1 0 2023____.

**U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR LEGACY MORTGAGE ASSET TRUST 2019-GS3, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, AS ATTORNEY IN FACT**

DAVID SEGOVIA, ASSISTANT SECRETARY

STATE OF **TEXAS**                    COUNTY OF **DALLAS** ) ss.

On ____JAN 1 0 2023____, before me, **SANDRA CUELLAR**, personally appeared **DAVID SEGOVIA** known to me to be the **ASSISTANT SECRETARY** of **RUSHMORE LOAN MANAGEMENT SERVICES LLC AS ATTORNEY-IN-FACT FOR U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR LEGACY MORTGAGE ASSET TRUST 2019-GS3** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

**SANDRA CUELLAR (COMMISSION EXP. 05/06/2024)**
NOTARY PUBLIC

| |
|---|
| SANDRA CUELLAR<br>Notary Public, State of Texas<br>Comm. Expires 05-06-2024<br>Notary ID ████ |

Page 1 of 1

Requested By: g.shalini, Printed: 5/20/2025 10:35 AM

| Borrower | MELISSA A MESENBRINK |
|---|---|
| Payments in POC (Arrears details) | Principal & interest due is $11,191.68 , Prepetition fees due is $4,678.54 , Escrow deficiency is $3,384.41 , Projected escrow shortage is $1,201.16 , less funds on hand $1045.35 Total prepetition arrearage is $20,455.79; due date 1/1/2025 |
| Case Number | 25-34184 |
| Filing Date | 12/16/2025 |
| 1st Post Due Date | 1/1/2026 |

### POST-PETITION PAYMENT CHANGES

| EFFECTIVE | 01/01/26 | | | | | |
|---|---|---|---|---|---|---|
| AMOUNT | 1246.71 | | | | | |

| Date Received | Amount Received | Payment Amount Due | To/From Suspense | Suspense Balance | Due Date | Comments |
|---|---|---|---|---|---|---|
| | | | | 0.00 | | |
| | | | 0.00 | 0.00 | | |
| | | | 0.00 | 0.00 | | |
| | | | 0.00 | 0.00 | | Next due date is on 1/1/2026 |
| | | | 0.00 | 0.00 | | |
| | | | 0.00 | 0.00 | | |

| Arrears Due: | 1/1/2026 | 1246.71 |
|---|---|---|
| | 2/1/2026 | 1246.71 |
| | 3/1/2026 | 1246.71 |
| | 4/1/2026 | 1246.71 |
| | 5/1/2026 | 1246.71 |
| | | |
| Less suspense: | | 0.00 |
| TOTAL: | | $6,233.55 |

Amber L. Labrecque, SBN 094593
ZBS Law, LLP
5 Centerpointe Dr., Suite 400
Lake Oswego, OR 97035
(503) 946-6558 | FAX: (503) 296-2884
Email: bankruptcy@zbslaw.com
File No. 26014460

Attorneys for Movant.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re:

Melissa Ann Mesenbrink,

       Debtor.

Case No.: 25-34184-thp13

Chapter 13

## CERTIFICATE OF SERVICE

    I, Katherine Kellams, certify that I am an employee of ZBS Law, LLP, 30 Corporate Park, Suite 450, Irvine, CA 92606, over the age of 18, and not a party within this action. I, further certify, that on the 19th day of May, 2026, I served via U.S. Mail a copy of the proposed **NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY IN A CHAPTER 13 CASE, CHAPTER 13 MOTION FOR RELIEF FROM STAY AND CERTIFICATE OF SERVICE** addressed to the following:

1

Melissa Ann Mesenbrink                       Debtor
8084 N. Burlington Ave.
Portland, OR 97203


Jessica Lee Molligan                         Debtor's Counsel
Attorney at Law                              jessicamolligan@comcast.net
PO Box 16893
Portland, OR 97292


Wayne Godare                                 Trustee
222 SW Columbia St #1700                     ecf_portland13@trustee13.com
Portland, OR 97201


US Trustee, Portland                         US Trustee
1220 SW 3rd Ave., Rm. 315                    USTPRegion18.PL.ECF@usdoj.gov
Portland, OR 97204


Christian A. Torimino                        Counsel for US Trustee
DOJ-Ust                                      christian.torimino@usdoj.gov
1220 SW 3rd Ave.
Room 315
Portland, OR 97204




_/s/ Katherine Kellams_
An Employee of ZBS Law, LLP

2

Brian Wheeler
3939 NE Hancock St
Suite 304
Portland, OR 97212
503.284.0974

 Gmail                                      **Melissa Mesenbrink <mamesenbrink@gmail.com>**

# Question
6 messages

**Melissa Mesenbrink** <mamesenbrink@gmail.com>                    Thu, May 28, 2026 at 6:27 PM
To: Jessica Molligan <jessicamolligan@gmail.com>

Hi Jessica-

I did have a question because I don't know what's going on with anything and you didn't reply to my last email. I just went to the mailbox and discovered I have less than 14 days to File an answer with the court and it doesn't list your name? That confused me. So I need to file this on my own in a couple days or get another attorney to help me with it?

I was just calling to confirm because I don't remember getting a formal withdrawal as my attorney as of yet?

Thank you

Melissa



**IMG_0283 (1).jpeg**
4354K

---

**Jessica Molligan** <jessicamolligan@gmail.com>                   Fri, May 29, 2026 at 6:06 PM
To: Melissa Mesenbrink <mamesenbrink@gmail.com>

I am still your attorney of record because no Order was issued by the Court allowing me to withdraw.  However, your case was dismissed and closed after you decided to not proceed with filing an Amended Plan.  When the Trustee got an order to reopen it, in order to file his Motion to Disgorge Fees, that kicked in the automatic stay protections.  So your mortgage company is moving for relief from that in order to move against your property.
I don't know what you are talking about in terms of an Answer but I don't see any point at all in objecting to their motion for relief from stay.  There is no legal basis to not give them that relief.
If you could please resend the email you claim I did not respond to, I will be sure to address it.

[Quoted text hidden]

Exhibit B
2 of 2

--
**THE OFFICE WILL BE CLOSED 6.3.26 THROUGH 6.9.26**

Jessica Molligan
Attorney at Law
PO Box 16893
Portland, OR  97292
971.350.7347 Office
503.975.2920 Cell

---

**Melissa Mesenbrink** <mamesenbrink@gmail.com>                    Fri, May 29, 2026 at 6:59 PM
To: Jessica Molligan <jessicamolligan@gmail.com>

HuH?! And, just let them foreclose on my property?!    Exhibit A                    1 of 2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

Case No. _____**25-34184-thp13**_____

In re
Melissa Ann Mesenbrink

Notice of Motion for Relief
From (Check All That Apply):
☒ Automatic Stay in a Chapter 7/13 Case
☐ Chapter 13 Codebtor Stay

Debtor(s)

1. **YOU ARE NOTIFIED** that a motion was filed by **Selene Finance LP as Servicer for MCLP*** , the moving party, for (Check all that apply):
   ☒ Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 U.S.C. § 362.
   ☐ Relief from the stay protecting the codebtor and codebtor's property as provided by 11 U.S.C. § 1301.
   ☐ Codebtor's name and service address are: _____
   _____

2. A copy of the motion is attached. The name and service address of the moving party's attorney (or moving party, if no attorney) are: **Amber L. Labrecque, ZBS Law, LLP, 5 Centerpointe Dr.,** _____
   **Suite 400, Lake Oswego, OR 97035**

3. If you wish to resist the motion, you must, within 14 days of the service date shown below, file the following with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E. 8th Ave. #2600, Eugene OR 97401:

   a. A written response that states the facts supporting the opposition to the motion by filling in the applicable "response" portions on a copy of the original motion. If the response will be electronically filed, the response must be prepared using the fillable pdf version of the original motion unless the motion was filed on paper and could not be electronically obtained from the movant; and

   b. A fully completed notice of hearing using Local Bankruptcy Form (LBF) 721, including the date and time of the hearing. Available hearing dates and times are posted at https://www.orb.uscourts.gov under the "Hearings" heading. If you do not have internet access, please call the court at (503) 326-1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information.

4. **Failure to Object or Serve Proper Notice of Hearing.** If you fail to file a timely response and notice of hearing, then the automatic stay may expire as to the debtor(s) pursuant to 11 U.S.C. § 362(e) and the stay protecting the codebtor may expire pursuant to 11 U.S.C. § 1301(d), or the court may sign an order without further notice, submitted by the moving party on LBF 720.90, granting relief from the debtor stay and/or codebtor stay.

720 (12/1/2018)                     Page 1 of 2

[Quoted text hidden]

---

**Melissa Mesenbrink** <mamesenbrink@gmail.com>                    Fri, May 29, 2026 at 7:04 PM
To: Jessica Molligan <jessicamolligan@gmail.com>

And, I never decided that...
I was asking you about other options like selling my condo. Then you accused me of being drunk AGAIN and "bit my head off" so, I stopped asking questions. That's what really happened...
[Quoted text hidden]

---

**Melissa Mesenbrink** <mamesenbrink@gmail.com>                    Fri, May 29, 2026 at 8:41 PM
To: Jessica Molligan <jessicamolligan@gmail.com>

We're good. You've answered all my questions.

Thank you
[Quoted text hidden]

---

**Melissa Mesenbrink** <mamesenbrink@gmail.com>                    Sun, May 31, 2026 at 6:33 PM
To: Jessica Molligan <jessicamolligan@gmail.com>

Happy Sunday Jessica!

Yes, you know exactly what I'm talking about even if I don't say "correctly"! You clearly "got" the point! And, I was referring to filing the objection but WE ARE  obviously not ready or prepared to do so at this point and need to request more time.

As my Attorney I'm asking you to please give me a list of options BESIDES handing over the property. Before the case was dismissed I was asking you about "selling my condo under bankruptcy because I have enough equity" and I started looking for real estate agents so that will still definitely be an "option" but a last one. My main goal and it always has been and that is to keep my condo or why else would I pay you $2500 to "stop the foreclosure"? I clearly wanted to keep it.

And, the reason I called you which you never did answer my question, "Did you get a copy of the Notice below from my mortgage company's attorney" because, I didn't see your name on it anywhere just mine?

What am I supposed to do with this? I thought that's why I thought I have an Attorney?

Please let me know our next steps.

Thank you
[Quoted text hidden]

Exhibit B                                                                        1 of 2

 Gmail

**Melissa Mesenbrink <mamesenbrink@gmail.com>**

## Question?
2 messages

**Melissa Mesenbrink** <mamesenbrink@gmail.com>                         Sun, Apr 26, 2026 at 8:08 PM
To: Jessica Molligan <jessicamolligan@gmail.com>

Hi Jessica-

Have you heard anything about my case? Not sure if you're still my attorney or not? The case was reopened? And, you did take my Mom's money and I assume spent it?

Or, is THIS MY Problem to figure out?

Melissa

---

**Melissa Mesenbrink** <mamesenbrink@gmail.com>                         Mon, Jun 1, 2026 at 1:25 AM
To: "Torimino, Christian (USTP)" <christian.torimino@usdoj.gov>, "Myerson, Caitlyn J. (USTP)"
<Caitlyn.J.Myerson@usdoj.gov>

**Subject:** Case No. 25-34184-thp13 — Mesenbrink — Attorney Misconduct Update

Hi Christian-

This is "the email" I was referring to in the last group of emails that I forwarded to you where she just stopped responding to me on 4/26/26.

The first time I heard from Jessica again was on 5/26/26 when I emailed her and left a voicemail about what I had received in the mail from my mortgage company.

I also just realized I copied Jessica (unintentionally) on the forward I sent to you and Caitlyn but, that's okay.

I'll send you and Caitlyn everything I'm taking to the Courthouse tomorrow to file the objection and follow up with the hardcopies in mail to everyone listed in motion.

Thank you so much
Melissa
[Quoted text hidden]

Exhibit B                                                                                                       2 of 2

𝒞

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF OREGON

In re:                               )

MELISSA A MESENBRINK         )

                              )

          Debtor(s)       )

Case No. **25-34184-THP13**

### TRUSTEE'S SPECIAL NOTICE RE: SECTION 1328(a) DISCHARGE

It has come to my attention that you have failed to make all payments to your mortgage servicer as required by the direct payment paragraph of your Chapter 13 plan and as shown on Schedule J as one of your monthly expenses. It is my duty to inform you that Section 1328(a) of the Bankruptcy Code requires that before I may inform the Clerk's Office that you should be granted a <u>discharge</u>, I must certify to the Clerk that you have completed <u>all payments under the plan.</u> <u>The direct payment to the servicer listed in your Chapter 13 plan is considered to be a payment under the plan.</u> See, e.g., *In re Mrdutt*, 600 BR 72 (9th Cir. BAP 2019)

In order to correct this issue and allow my office to ultimately inform the Clerk all payments under the plan have been made, you must demonstrate to my office that you have cured this default in your plan. You must do this by the time you finish your regular bankruptcy plan payments. For under median cases, I will keep the case open until the 60th month to allow plenty of time to cure the default. If not cured by that time, I will be obliged to file a Motion to Dismiss for Failure to Complete the plan within the 60 month limit to bring the matter before the Bankruptcy Judge.

Informing my office of the reasons you failed to make the missed payments cannot fix this problem. I must have solid proof that the missed payments have in some form been paid to the proper mortgage servicer or a viable amended plan sent to all creditors that cures the default. Proof that full payments of the direct payment paragraph of your Chapter 13 plan have been made, would include a statement from your mortgage servicer that those missing payments have been made. If you fail to do so, it is possible that you will not receive a discharge at the conclusion of your case.

I send this Notice to you now in order to give you time to correct this problem with your plan. It is my sincere desire that you receive a discharge and I hope this letter will be seen as notice to you and your attorney that this serious problem must be addressed and addressed quickly.

Dated: <u>May 21, 2026</u>

                                     /s/ Wayne Godare
                                     Chapter 13 Trustee

I certify that on <u>May 21, 2026</u>, I mailed copies of the above Notice to the debtor(s) and the debtor's attorney, JESSICA LEE MOLLIGAN ATTORNEY AT LAW , if any.

                                   /s/Audrey Jackson
                                     Office of the Chapter 13 Trustee

Exhibit C                                                     1 of 1

 **Gmail**

**Melissa Mesenbrink <mamesenbrink@gmail.com>**

## Courthouse to File 6/1/26

1 message

**Melissa Mesenbrink** <mamesenbrink@gmail.com>
To: Melissa Mesenbrink <mamesenbrink@gmail.com>

Mon, Jun 1, 2026 at 1:53 AM

*[handwritten: Original File one copy - signed & stamped]*
*[handwritten: 1 to → Keep]*

**Tonight:**

- ☑ Email Christian    *[handwritten: Amber]*
- ☑ Print 5 copies    *[handwritten: Jessica]*
- ☑ Set alarm    *[handwritten: Jonas Anderson/Christian]*

*[handwritten: Wayne Godare Trustee]*

**Tomorrow June 1:**

- 🏛 Courthouse early — 1050 SW 6th Ave #700
- 📩 Ask for file stamp on your copy   *[handwritten: 97204]*
- 📪 Mail copies to all parties after filing

*[handwritten: 503-326-4186]*

**June 9 @ 1:30 PM:**

- 📞 Call (855) 244-8681
- 🔑 Code: 2316 376 3280
- Say: *"Melissa Mesenbrink, Debtor, appearing without effective counsel"*
- 
- **Just fill in:**
  - ○ Your last 4 digits of SSN where it says XXXX
  - ○ The service date on the certification line
  - ○ Sign and date at the bottom

  ### Your COMPLETE final package is now:

  1. Cover Letter to Court
  2. Objection
  3. LBF 721 Notice of Hearing
  4. Exhibit A, B, C
-

## Upgrade Your Legacy PACER Account

**If you have your own PACER account that was created prior to August 11, 2014, it must be upgraded before you can e-file in a NextGen CM/ECF court. If you do not have your own PACER account (i.e., if you share a PACER account with other members of your firm), refer to the instructions for registering for a new PACER account.**

| Step | Action |
|------|--------|
| 1 | Go to www.pacer.gov |
| 2 | Select **Manage My Account** <br><br> PACER — PUBLIC ACCESS TO COURT ELECTRONIC RECORDS |
| 3 | Login with your current PACER Username and Password. |
| 4 | Note the **Account Type.**  Select the **Upgrade** link <br><br> Account Number  2653066 <br> Username  us3686 <br> Account Balance  $0.00 <br> Case Search Status  Active <br> Account Type  Legacy PACER Account  (Upgrade) |
| 5 | Take note of the information about account conversion. |
| 6 | Update/enter all required information in each tab (Person, Address, Security).  Select **Next** to move to the next tab and **Submit** when finished. <br><br> In the Person tab, choose the **user type** that best describes your situation. If you work for a government agency, check with your employer as to how you should complete your registration. <br><br> User Type *  INDIVIDUAL <br> OTHER COMMERCIAL ACCOUNT <br> *************** Government Accounts *************** <br> FEDERAL GOVERNMENT <br> FEDERAL JUDICIARY <br> STATE OR LOCAL GOVERNMENT <br> *************** Individual Accounts *************** <br> INDIVIDUAL <br> STUDENT |

| Step | Action |
|------|--------|
| 7 | Close the **Upgrade Complete** button.  Your account is upgraded.  After the Court goes live on NextGen on September 28, you will link this account to your CM/ECF account. |

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I served a true and correct copy of the foregoing Objection upon the following parties by U.S. Mail, first-class postage prepaid:

Amber L. Labrecque

ZBS Law LLP

5 Centerpointe Dr., Suite 400

Lake Oswego, OR 97035

(Attorney for Selene Finance LP)


Jessica Molligan, Attorney at Law

PO Box 16893

Portland, OR 97292


Jonas V. Anderson, Acting U.S. Trustee

c/o Christian A. Torimino

1220 SW 3rd Ave., Rm. 315

Portland, OR 97204


Wayne Godare, Chapter 13 Trustee

(via court filing or current mailing address on file with the Court)


Melissa Ann Mesenbrink

Date: _____6/1/26_____

5

Melissa Ann Mesenbrink

8084 N. Burlington Ave.

Portland, OR 97203

mamesenbrink@gmail.com


Date: June 1, 2026


The Honorable Teresa H. Pearson

United States Bankruptcy Court

District of Oregon

1050 SW 6th Ave., Suite 700

Portland, OR 97204


## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re: Melissa Ann Mesenbrink

Case No. 25-34184-thp13

Chapter 13


### DEBTOR'S COVER LETTER AND NOTICE OF FILING WITHOUT EFFECTIVE COUNSEL


### TO THE HONORABLE COURT:

My name is Melissa Ann Mesenbrink. I am the Debtor in the above-captioned Chapter 13 bankruptcy case. I am filing this cover letter to respectfully bring several urgent matters to the Court's attention, and to explain why I am appearing without effective legal representation to file the attached Objection to Motion for Relief from Automatic Stay.


### 1. MY ATTORNEY HAS ADVISED ME NOT TO FIGHT FOR MY HOME.

Jessica Molligan remains my attorney of record. On May 29, 2026, I contacted Ms. Molligan after receiving the Motion for Relief from Stay filed by Selene Finance LP. Ms. Molligan responded by email stating that she sees "no point at all in objecting" and that there is "no legal basis" to oppose the motion. She advised me, in effect, to allow the foreclosure to proceed.

I respectfully submit that this advice is incorrect. As set forth in the attached Objection, Movant's own motion confirms that I have approximately $119,930.45 in equity in my home. Under 11 U.S.C. § 362(d)(2), substantial equity is a recognized basis to deny relief from stay. I am filing

this Objection because I believe I have every right to fight for my home, and because following Ms. Molligan's advice would have resulted in the loss of my primary residence without any hearing.

## 2. MY ATTORNEY'S OFFICE IS CLOSED DURING MY DEADLINE PERIOD.

Ms. Molligan's email signature states that her office will be closed from June 3 through June 9, 2026. My deadline to respond to Selene Finance's motion is approximately June 2, 2026 — 14 days after service on May 19, 2026. Ms. Molligan has taken no steps to file an objection on my behalf, seek an extension of time, or protect my rights before closing her office for the week.

## 3. MY ATTORNEY'S CONDUCT IS CURRENTLY UNDER FEDERAL INVESTIGATION.

The United States Trustee filed a Motion to Disgorge Attorney Fees on May 26, 2026, documenting that Ms. Molligan forged my electronic signature on the retainer agreement, publicly filed my unredacted Social Security number, and failed to advise me of my legal options — including my right to retain or sell my property through the Chapter 13 plan. I was not given proper legal advice during the pendency of this case, and the prior dismissal was directly attributable to attorney misconduct, not to my own unwillingness to reorganize.

## 4. I NEVER CHOSE TO LET MY HOME GO.

Ms. Molligan has suggested that I decided not to proceed with an amended plan. This is not accurate. I was asking Ms. Molligan about my options, including selling the property through the bankruptcy, if necessary, when she became hostile and accused me of being intoxicated. I stopped asking questions out of fear and confusion — not because I wanted to give up my home. I paid Ms. Molligan $2,500 specifically to stop the foreclosure and save my home. That has always been my goal.

## 5. THE CHAPTER 13 TRUSTEE SUPPORTS KEEPING MY CASE ALIVE.

On May 21, 2026, Chapter 13 Trustee Wayne Godare sent me a Special Notice confirming that he intends to keep my case open through the 60th month to give me time to cure the direct payment default. His letter reflects his sincere desire that I receive a discharge. I am asking this Court for the same opportunity.

## RELIEF REQUESTED

I respectfully ask this Court to:

(1)  Accept my attached Objection to Motion for Relief from Automatic Stay, filed without effective counsel due to the circumstances described above;

(2)  Appoint a hearing date at which I may appear and be heard;

(3)  Grant me at least 60 days to obtain substitute counsel and file an amended Chapter 13 plan; and

(4)  Take notice of Ms. Molligan's conduct as described herein, which the Court may wish to consider in connection with the United States Trustee's pending Motion to Disgorge Fees.

I am a working person with a Bachelor's Degree and an MBA. I have a job and I am actively seeking full-time employment. I can fund a Chapter 13 plan. I just need the opportunity to do so with competent legal help. I am asking this Court for that chance.

I apologize for any procedural imperfections in these filings. I am doing my best under very difficult circumstances, including significant stress and health challenges caused in no small part by this situation. I thank the Court for its time and consideration.

Respectfully submitted,

_Melissa Ann Mesenbrink_

Melissa Ann Mesenbrink

Debtor, Appearing Without Effective Counsel

8084 N. Burlington Ave.

Portland, OR 97203

Case No. 25-34184-thp13

Date:  ___6\1\26___

## EXHIBIT LIST

Exhibit A:  Email from Jessica Molligan dated May 29, 2026 advising Debtor not to object to Motion for Relief from Stay

Exhibit B:  Email responses from Debtor to Jessica Molligan dated May 29, 2026 stating Debtor never chose dismissal

Exhibit C:  Trustee's Special Notice Re: Section 1328(a) Discharge dated May 21, 2026